UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MICHAEL FAZIO & MICHAEL DASH,      Civil Case No. 14-CV-7234

        Plaintiffs,

   v.

RANESTORM ENTERTAINMENT, LLC, ET AL.,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S, EZRA WILLIAM'S, MOTION TO DISMISS COUNTS THREE AND FIVE PURSUANT TO FED. R. CIV. P. 12(b)(6)**

                          Cole Schotz P.C.
                          A Professional Corporation
                          900 Third Avenue
                          16th Floor
                          New York, NY  10022-4728
                          212.752.8000
                          212.752.8393 (fax)
                          Attorneys for Defendant, Ezra William

Of Counsel and on the Brief:
    Leo V. Leyva
    Jed M. Weiss

**TABLE OF CONTENTS**

                                                                                                         **Page**

TABLE OF AUTHORITIES ....................................................... **Error! Bookmark not defined.**

PRELIMINARY STATEMENT ..........................................................................................1

STATEMENT OF FACTS ..................................................................................................2

LEGAL ARGUMENT .........................................................................................................4

      I.     PLAINTIFFS' COMPLAINT MUST BE DISMISSED BECAUSE IT WAS UNTIMELY SERVED PURSUANT TO FED. R. CIV. P. 4(M) .................5

      II.    PLAINTIFFS' FRAUD CLAIM MUST BE DISMISSED BECAUSE THE COMPLAINT DOES NOT PLEAD THAT WILLIAM MADE ANY REPRESENTATIONS TO PLAINTIFFS OR HAD ANY INTENT TO DECEIVE .................................................................................................................7

            A.    THE COMPLAINT FAILS TO PLEAD THAT WILLIAM MADE ANY REPRESENTATIONS TO PLAINTIFFS ..........................................8

            B.    THE COMPLAINT FAILS TO ESTABLISH THAT WILLIAM HAD AN INTENT TO DECEIVE PLAINTIFFS ....................................10

      III.   COUNT FIVE MUST ALSO BE DISMISSED BECAUSE CIVIL CONSPIRACY CANNOT SUCCEED WITHOUT AN UNDERLYING TORT; IN THE ALTERNATIVE, PLAINTIFFS HAVE NOT PLEAD THAT WILLIAM COMMITTED ANY OVERT ACT ......................................11

            A.    PLAINTIFFS HAVE NOT ESTABLISHED A CONNECTION BETWEEN WILLIAM AND THE OTHER DEFENDANTS ..................12

            B.    PLAINTIFFS HAVE FAILED TO PLEAD THAT WILLIAM COMMITTED AN OVERT ACT ...........................................................13

CONCLUSION ..................................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995) ............................................................11

*Alexander & Alexander of N.Y. v. Fritzen*, 68 N.Y.2d 968 (1986) ...............................................12

*Allison v. Round Table Inv. Mgmt. Co. LP*, 2010 WL 4456648 (S.D.N.Y. Oct. 22, 2010), *aff'd*, 447 F. App'x 274 (2d Cir. 2012) ...........................................................................8

*Amron v. Morgan Stanley Inv. Advisors, Inc.*, 464 F.3d 338 (2d Cir. 2006) ..................................4

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) .......................................................................................4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................................4

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13 (2d Cir. 1996) ...............................................................................................................................7

*Dangler v. N.Y. City Off Track Betting Corp.*, 193 F.3d 130 (2d Cir. 1990)..................................5

*Decker v. Massey-Ferguson Ltd.*, 1979 WL 1272 (S.D.N.Y. Dec. 26, 1979) ................................7

*Decter v. Second Nature Therapeutic Program, LLC*, 2014 WL 4378805 (E.D.N.Y. Sept. 5, 2014).................................................................................................11, 13

*F.N. Wolf & Co., Inc. v. Estate of Neal*, 1991 WL 34186 (S.D.N.Y. Feb. 25, 1991).............7, 8, 10

*Feingold v. Hankin*, 269 F.Supp.2d 268 (S.D.N.Y. 2003)..............................................................6

*Fezzani v. Bear, Stearns & Co.*, 592 F.Supp.2d 410 (S.D.N.Y. 2008)..........................................13

*Hertzner v. U.S. Postal Serv.*, 2007 WL 869585 (E.D.N.Y. Mar. 20, 2007)...............................4, 6

*Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*, 709 F.3d 129 (2d Cir. 2013) ...............................................................................................................................4

*Mejia v. Castle Hotel, Inc.*, 164 F.R.D. 343 (S.D.N.Y. 1996).........................................................6

*Mikityanskiy v. DMS Holdings, Inc.*, 2011 WL 4552350 (S.D.N.Y. Oct. 3, 2011)......................10

*Reese v. Univ. of Rochester*, 2005 WL 1458632 (W.D.N.Y. June 20, 2005).................................6

*Rutkin v. Reinfeld*, 229 F.2d 248 (2d Cir. 1956) ..........................................................................13

*Schnell v. Conseco, Inc.*, 43 F.Supp.2d 438, 449 (S.D.N.Y. 1999) ..............................................11

*Treppel v. Biovail Corp.*, 2005 WL 2086339 (S.D.N.Y. Aug. 30, 2005) .................................. 2, 12

*In re WRT Energy Sec. Litig.*, 1999 WL 178749 (S.D.N.Y. Mar. 31, 1999) ................................ 10

**RULES**

FED. R. CIV. P. 4(d) ........................................................................................................................ 5

FED. R. CIV. P. 4(m) ..................................................................................................................... 1, 7

FED. R. CIV. P. 4(c)(l) .................................................................................................................... 7

FED. R. CIV. P. 9(b) ............................................................................................................... 7, 10, 11

**STATUTES**

18 U.S.C. § 1962, *et seq.* ............................................................................................................... 3

**PRELIMINARY STATEMENT**

This case is a classic example of overreaching.  Plaintiffs, Michael Fazio ("Fazio") and Michael Dash ("Dash") (collectively, "Plaintiffs"), are asserting allegations of fraud and civil conspiracy against Defendant, Ezra William ("William")—a party whose only involvement with this case arises from his forged name appearing on a document provided to Plaintiffs by co-Defendant, David Ranes ("Ranes"), related to business dealings with co-Defendant, Ranestorm Entertainment, LLC ("Ranestorm").  Not only was Plaintiffs' Complaint (the "Complaint") untimely served on William pursuant to FRCP 4(m), potentially leaving William at a severe disadvantage given the advanced stage of discovery and upcoming trial date, the allegations contained therein are legally insufficient, conclusory, and without any factual support and, therefore, must be dismissed.

Plaintiffs has not—because they cannot—plead that William affirmatively made any statement to them, a necessary element to a fraudulent misrepresentation claim, let alone a material misrepresentation that was known to be false made with the intent to deceive Plaintiffs to allegedly loan $200,000 to Ranestorm.  (*See* Complaint at ¶12, attached to the Declaration of Leonel V. Leyva, Esq. (the "Leyva Decl.") as **Exhibit A**).  Plaintiffs do not even attempt to identify a single misrepresentation allegedly made by William.  In fact, William is only identified by name in five instances in the thirty-three (33) page Complaint.  (*See id.* at ¶¶9, 14, 17, 57, 58).  These few instances do not detail a single representation made by William to the Plaintiffs, and do not provide a single fact to substantiate any knowledge of or participation in a fraudulent scheme.  Rather, the Complaint simply alleges that William's forged signature appears on an "Investment Agreement" that allegedly was supplied to the Plaintiffs by Ranes as evidence of Ranestorm's ability to repay the $200,000.  (*Id.* at ¶58).  Further, the Complaint does

not, because it cannot, allege that William intended to deceive the Plaintiffs, or had any motivation to do so.

Because Count Three, Plaintiffs' fraud cause of action against William, must be dismissed as a matter of law, Plaintiffs' civil conspiracy claim also fails. To properly allege civil conspiracy, there must be an underlying tort. *See Treppel v. Biovail Corp.*, 2005 WL 2086339, at * 5 (S.D.N.Y. Aug. 30, 2005). Even if fraud were not dismissed, Count Five must still be dismissed because Plaintiffs have not established any connection between William and the alleged fraudulent activity of the other defendants, other than his admittedly forged signature, and do not assert any overt act committed by William.

Counts Three and Five fail for these reasons. Other than citing a "formulaic recitation" of the elements of fraud and civil conspiracy, Plaintiffs have failed to adequately allege these Counts as a matter of law. Accordingly, as discussed more fully below, the remainder of Plaintiffs' Complaint fails as a matter of law and should be dismissed in its entirety.

## STATEMENT OF FACTS

According to the Complaint, William is a "friend and business associate" of co-Defendant, Ranes, managing member of co-Defendants, Ranestorm and New Myth Entertainment, LLC ("New Myth"). (Complaint at ¶9). Plaintiffs allege that Ranes operated Ranestorm in a fraudulent scheme to secure financing from investors for the purpose of developing motion pictures. (*Id.* at ¶13). Plaintiffs allegedly loaned $200,000 to Ranestorm, (the "Loan"), that was part of a Film Development Bridge Loan Agreement (the "Loan Agreement"). (*Id.* at ¶12). Per the Loan Agreement, the Loan was to be repaid in full with a 50% premium on or before April 21, 2014. (*Id.*). Defendants allegedly defaulted on the loan. (*Id.*).

2

Plaintiffs allege that William was "fully aware of and agreed to" this scheme brainstormed by Ranes and actively participated in or consciously agreed to become part of this conspiracy to defraud. (*Id.* at ¶14). Plaintiffs assert that William's conscious participation in the scheme involved permitting Ranes, or Ranestorm, to use his name, reputation, and good will to induce Plaintiffs to invest in Ranestorm. (*Id.* at ¶17). The only purported detail of William's participation in this scheme, however, is William's forged signature on a concededly fraudulent document. (*Id.* at ¶¶57-58).

According to the Complaint, Ranes allegedly provided Plaintiffs with an agreement between Ranestorm and William, (the "Investment Agreement"), that contained William's forged signature and providing for William to invest $2.5 million in Ranestorm. (*Id.* at ¶57). This fraudulent document was apparently used as an example of Ranestorm's ability to repay the Loan. (*Id.*). Plaintiffs admit that the Investment Agreement is not authentic, and acknowledge that William advised others that the signatures are "completely fake." (*Id.* at ¶58). Nothing in the Complaint purports to demonstrate or serve as an example of William's awareness in or conscious agreement to participate in this allegedly fraudulent scheme. In fact, the Complaint does not allege that William made any representations to, or had any communications with, the Plaintiffs whatsoever.

The Complaint was filed in the United States District Court, Southern District of New York, on September 8, 2014. William was served the Complaint on January 12, 2015, after significant motion practice, discovery, and depositions have been completed. The Complaint asserted five Counts against seven parties: Ranestorm, New Myth, Ranes, Tom DeSanto, Grace Roeder Oppenheimer, Diane Oxley, and William. The five Counts were: (1) Civil Racketeering Influence Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); (2) Civil RICO

Conspiracy, 18 U.S.C. § 1962(d); (3) common-law fraud and fraudulent misrepresentation; (4) breach of contract; and (5) civil conspiracy.  Pursuant to a December 3, 2014 Order, Counts One, Two, and Four of the Complaint were dismissed as to certain of the other defendants.  By stipulation dated February 2, 2015, Plaintiffs' counsel and William's counsel agreed to the dismissal of Counts One, Two, and Four as to William.  (Leyva Decl. at ¶ 3, Ex. B).

As discussed in greater detail below, because of the untimely service, and Plaintiffs' failure to adequately plead fraud or civil conspiracy, William requests that the Court dismiss the remaining Counts Three and Five in the Complaint against him.

## **LEGAL ARGUMENT**

A complaint must allege "enough facts to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A plaintiff must, therefore, plead facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Hertzner v. U.S. Postal Serv.*, 2007 WL 869585, at * 3 (E.D.N.Y. Mar. 20, 2007) ("A plaintiff must allege . . . those facts necessary to a finding of liability.") (citing *Amron v. Morgan Stanley Inv. Advisors, Inc.*, 464 F.3d 338, 343 (2d Cir. 2006)).  This requires more than mere conclusions and "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*, 550 U.S. at 555; *see also Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (courts "give no effect at all to legal conclusions couched as factual allegations.") (internal citations omitted).

Plaintiffs' Complaint must be dismissed because the Complaint was untimely served in violation of FED. R. CIV. P. 4(m).  There exists no good cause for delay and a discretionary extension is unwarranted given Plaintiffs' complete lack of diligence, and the prejudice to William.  The Complaint must also be dismissed for failure to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  Plaintiffs' fraud claim fails because the Complaint fails to

plead that William made any representations to Plaintiffs, let alone any misrepresentations of material fact. Further, the Complaint fails to plead that William had any intent or motivation to deceive Plaintiffs. As a result of these fatal pleading deficiencies, Count Five must also be dismissed because civil conspiracy is not a stand-alone tort. Even if it were, Plaintiffs have not established any connection between William and the other defendants' alleged fraudulent activity, other than William's forged signature. Equally as compelling, Plaintiffs have not alleged that William committed any overt act, as required to sustain a cause of action for civil conspiracy. For these reasons, Plaintiffs cannot plead, nor prove, any set of facts in support of Counts Three and Five that would entitle them to relief. *See Dangler v. N.Y. City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1990) (indicating that a complaint should be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") (internal citations omitted).

    **I.**    **PLAINTIFFS' COMPLAINT MUST BE DISMISSED BECAUSE IT WAS UNTIMELY SERVED PURSUANT TO FED. R. CIV. P. 4(M)**

Plaintiffs failed to serve William within 120 days after the Complaint was filed. FED. R. CIV. P. 4(m) (providing that a defendant must be served within 120 days after the complaint is filed). Here, Plaintiffs filed their Complaint on September 8, 2014. William was served on January 12, 2015—in clear violation of FED. R. CIV. P. 4(c)(1) & (m). Therefore, the Court "must" dismiss the action against William. FED. R. CIV. P. 4(m).

It is anticipated that Plaintiffs will argue that "good cause" exists to extend the 120 day rule. According to Plaintiffs, at the outset of the litigation, Plaintiffs sent William a waiver of service pursuant to FRCP 4(d), and that William never returned same. Plaintiffs will likely argue that other defendants then moved to dismiss, and Plaintiffs were consumed with that motion

5

practice and were unable to serve William. Plaintiffs' anticipated contention that "good cause" exists as a result of the foregoing is completely without merit.

"[A]n attorney's ignorance of the rules, inadvertence, neglect, or mistake do not constitute good cause." *Feingold v. Hankin*, 269 F.Supp.2d 268, 276 (S.D.N.Y. 2003). The reasonableness and diligence of a party's efforts to effect service and any prejudice to the defendant, however, are considered in determining whether good cause exists. *Id.* Plaintiffs were not diligent in their efforts to effect service. Plaintiffs were well aware of their responsibility to serve William within 120 days, and by virtue of the fact that Plaintiffs tried to effect service, and failed, they knew that they had not done so. Any argument that Plaintiffs were unable to effect service because they were opposing motions to dismiss rings hollow. *See id.* ("Good cause, or 'excusable neglect,' is evidenced only in exceptional circumstances, where the insufficiency of service results from circumstances beyond the plaintiff's control.").

A discretionary extension of the 120 day rule is also not merited. Courts generally consider four factors in determining whether a plaintiff is entitled to a discretionary extension: "(1) any applicable statutes of limitations would bar the action once refiled; (2) the defendant had actual notice of the claims asserted in the complaint; (3) defendant attempted to conceal the defect in service; and (4) defendant would be prejudiced by extending plaintiff's time for service." *Hertzner v. U.S. Postal Serv.*, 2007 WL 869585, at * 7 (E.D.N.Y. Mar. 20, 2007) (citing *Reese v. Univ. of Rochester*, 2005 WL 1458632, at * 1 (W.D.N.Y. June 20, 2005)). Courts pay particular attention to whether prejudice will result to the defendant. *See Mejia v. Castle Hotel, Inc.*, 164 F.R.D. 343, 345 (S.D.N.Y. 1996) (exercising its discretion to declare valid service filed nine days after expiration of the 120 day limit because no prejudice would

6

result to the defendants and plaintiff delayed prejudice in order to attempt consolidation of her claims into a single action).

Here, none of these factors favor granting a discretionary extension. The statute of limitations has not run, William did not have actual notice of the claims asserted against him, and he has not evaded service nor tried to conceal any defect in service. Finally, William is prejudiced because there have been two civil case management plans entered and William has not been privy to any of the discovery that has been exchanged. Significantly, William is at a distinct disadvantage because depositions have already been taken, and there is an upcoming scheduled trial.

Accordingly, Plaintiffs' complaint must be dismissed as to William pursuant to Federal Rule of Civil Procedure 4(m).

### II. PLAINTIFFS' FRAUD CLAIM MUST BE DISMISSED BECAUSE THE COMPLAINT DOES NOT PLEAD THAT WILLIAM MADE ANY REPRESENTATIONS TO PLAINTIFFS OR HAD ANY INTENT TO DECEIVE

To plead fraud, a plaintiff must allege: (1) a material misstatement, (2) known by the perpetrator to be false, (3) made with an intent to deceive, (4) upon which the plaintiff reasonably relies, and (5) that results in the plaintiff suffering damages. *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996). Fraud must be stated with particularity, indicating the circumstances constituting the alleged fraud. FED. R. CIV. P. 9(b).

The time, place, and contents of the alleged misrepresentations and the identity of the person making the alleged misrepresentations must be plead. *Decker v. Massey-Ferguson Ltd.*, 1979 WL 1272, at * 1 (S.D.N.Y. Dec. 26, 1979); *see F.N. Wolf & Co., Inc. v. Estate of Neal*, 1991 WL 34186, at * 4 (S.D.N.Y. Feb. 25, 1991) ("To satisfy the particularity requirement of Rule 9(b), a complaint must adequately specify the statements it claims were false or misleading,

7

give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and **<u>identify those responsible for the statements</u>**.") (emphasis added).  Furthermore, a Plaintiff must allege that the defendant accused of fraud had an intent or motivation to deceive.  *See Allison v. Round Table Inv. Mgmt. Co. LP*, 2010 WL 4456648, at * 3 (S.D.N.Y. Oct. 22, 2010), *aff'd*, 447 F. App'x 274 (2d Cir. 2012) (indicating that the plaintiff must show that the defendant intentionally misrepresented by either alleging a motive and clear opportunity to commit fraud or "identify circumstances indicating conscious behavior by the defendant.") (citation omitted).

Count Three must be dismissed because the Complaint fails to identify William as making any representation, let alone a material misrepresentation, and fails to plead with any particularity that William had an intent to deceive.

### A. <u>The Complaint Fails to Plead That William Made Any Representations To Plaintiffs</u>

Plaintiffs' Complaint does not plead that William made any representations, let alone misrepresentations of material fact, to Plaintiffs.  *See F.N. Wolf & Co., Inc. v. Estate of Neal*, 1991 WL 34186, at * 4 (S.D.N.Y. Feb. 25, 1991) ("[T]he complaint should inform **<u>each</u>** defendant of the nature of his alleged participation in the fraud.") (emphasis added).  Rather, the Complaint alleges in mere general terms that "Defendants" as a whole made misrepresentations to the Plaintiffs.  (*See* Complaint ¶28, ¶¶38-45, ¶91 ("Defendants knowingly and deliberately made material misrepresentations verbally and in writing . . . ."); ¶92 ("Defendants . . . made material misrepresentations [to defraud] . . . ."); ¶93 ("Defendants knew that their statements were false . . . ."); ¶94 ("Defendants knew that Plaintiffs would rely upon their false statements . . . .").  These general allegations, none of which identify a single representation from William to Plaintiffs, render the claim against William fatal.

8

The only instances where William is even identified in the Complaint are either stated in conclusory terms or are in connection with a fraudulent "Investment Agreement" that the Complaint admits William did not sign. (*See* Complaint, ¶¶14, 17, 57-58). According to Plaintiffs, William was "fully aware" of the scheme and was a "direct and active" participant in the conspiracy. (*Id.* at ¶14). The Complaint, however, does not detail, as it must, how William was aware of this scheme or had any direct or active participation in it. Further, according to the Complaint, William allegedly participated by "knowingly" and "consciously" allowing Ranes to use his name, reputation, and good will to induce Plaintiffs to enter into the Loan Agreement. (*Id.* at ¶17). Again, the Complaint does not detail how William knowingly did anything. The Complaint itself makes clear that the only connection between William and the Plaintiffs is William's forged name on a document he never saw which was provided to Plaintiffs **by Ranes** as further evidence of Ranestorm's ability to pay the Loan. (*Id.* at ¶57).

The allegations contained in the Complaint do not establish that William ever spoke or had any contact with Plaintiffs. Plaintiffs list the misrepresentations made by other defendants but not one misrepresentation, or communication, is identified to be made specifically by William. (*Id.* at ¶¶28, 38-45). Plaintiffs cannot identify a misrepresentation made by William because he never made any to Plaintiffs. Moreover, Plaintiffs concede that the Investment Agreement is not authentic and do not allege that William supplied Plaintiffs with it. (*Id.* at ¶58). The Complaint also admits that "William denies having signed the Investment and/or Co-Production and Financing Agreement, and . . . advised Wollner that the signatures on these documents, which purport to be his signature, are completely fake." (*Id.* at ¶58). The failure to identify William as making any misrepresentations to the Plaintiffs or as the author or supplier of the fraudulent Investment Agreement is fatal to Plaintiffs' allegation of fraud.

9

Courts enforce Federal Rule of Civil Procedure 9(b) "to accomplish its three goals: (1) providing a defendant fair notice of plaintiff's claim, to enable preparation of his defense; (2) protecting a defendant from harm to his reputation or goodwill; and (3) reducing the number of strike suits." *F.N. Wolf & Co., Inc. v. Estate of Neal*, 1991 WL 34186, at * 3 (S.D.N.Y. Feb. 25, 1991). Plaintiffs do not identify William with any particular misrepresentation or connect William to the fraudulent Investment Agreement, other than by his forged signature. These empty contentions do not give William any notice of Plaintiffs' claims against him and unfairly limit his ability to meaningfully defend against those claims.

### B. The Complaint Fails to Establish that William had an Intent to Deceive Plaintiffs

Plaintiffs have failed to allege that William had a motive to commit fraud or to identify any circumstances that demonstrate William's "conscious behavior" in defrauding Plaintiffs. The Complaint does not even attempt to set forth any details to establish William's desire to defraud Plaintiffs. There is no allegation that William knew of Plaintiffs' existence, let alone their business relationship with Ranes and Ranestorm. The lack of any allegations of William's intent to defraud is fatal to Plaintiff's fraud claim. *See Mikityanskiy v. DMS Holdings, Inc.*, 2011 WL 4552350, at * 3 (S.D.N.Y. Oct. 3, 2011) (dismissing the complaint for failure to adequately allege an intent to deceive because "the Complaint includes only one allegation that could be read as an 'objective indication'" that the defendants intended to deceive which, without more, "is not sufficient to satisfy the heightened pleading requirement of Rule 9."); *In re WRT Energy Sec. Litig.*, 1999 WL 178749, at * 8 (S.D.N.Y. Mar. 31, 1999) (stating that when a plaintiff alleges facts constituting circumstantial evidence of conscious behavior, to adequately establish intent, "the strength of the circumstantial allegations must be correspondingly greater.").

Plaintiff's fraud claim also fails to demonstrate "conscious behavior." The Complaint summarily concludes that William was "fully aware of and agreed to the fraudulent scheme" and "knowingly and consciously agreed to become part of the fraudulent scheme by permitting Ranes and/or Ranestorm to use [his] name[], reputation and good will to convince Plaintiffs to invest in Ranestorm." (Complaint at ¶¶14, 17). The only factual basis asserted to demonstrate "conscious behavior", however, is William's forged signature on the Investment Agreement. (*Id.* at ¶¶57-58). By conceding the lack of authenticity of the Investment Agreement and William's forgery, Plaintiffs have failed to properly allege William's conscious behavior to defraud. Instead, Plaintiffs have demonstrated that William did not consciously agree or participate in any scheme to defraud Plaintiffs. *See Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995) ("Because Rule 9(b) is intended to provide a defendant with fair notice of a plaintiff's claim . . . we must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations.") (internal citations omitted); *Schnell v. Conseco, Inc.*, 43 F.Supp.2d 438, 449 (S.D.N.Y. 1999) (dismissing a securities fraud claim because the plaintiff did not plead circumstances indicating conscious behavior "sufficient to withstand this motion to dismiss").

Because the Complaint fails to adequately plead scienter, a necessary element for fraud, Count Three must be dismissed.

### III. COUNT FIVE MUST ALSO BE DISMISSED BECAUSE CIVIL CONSPIRACY CANNOT SUCCEED WITHOUT AN UNDERLYING TORT; IN THE ALTERNATIVE, PLAINTIFFS HAVE NOT PLEAD THAT WILLIAM COMMITTED ANY OVERT ACT

Civil conspiracy is not an independent tort. *See Decter v. Second Nature Therapeutic Program, LLC*, 2014 WL 4378805, at * 11 (E.D.N.Y. Sept. 5, 2014) ("It is axiomatic that civil conspiracy cannot be alleged as a separate claim because New York law does not recognize civil

conspiracy as an independent tort."); *Treppel v. Biovail Corp.*, 2005 WL 2086339, at * 5 (S.D.N.Y. Aug. 30, 2005) ("Under New York law, a claim for civil conspiracy may stand only if it is connected to a separate underlying tort."). Because the Court must dismiss Count Three as a matter of law for the reasons discussed in Section II, *supra*, Count Five must also be dismissed because there is no underlying actionable tort. If the Court were to sustain Plaintiffs' fraud claim, then Count Five must still be dismissed because the Complaint does not establish any connection between William and the other defendants nor does it allege that William committed any overt act.

### A. Plaintiffs Have Not Established a Connection Between William and the Other Defendants

While a civil conspiracy claim may survive if it connects the actions of separate defendants with an allegedly actionable tort, Plaintiffs' Complaint fails to connect William to any fraudulent activity allegedly committed by the other defendants. *See Alexander & Alexander of N.Y. v. Fritzen*, 68 N.Y.2d 968, 969 (1986) ("Allegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort."). The Complaint only asserts, without any support, that William "is a friend and business associate of Ranes." (Complaint at ¶9). The Complaint merely makes conclusory assertions against William and provides no supporting factual basis as discussed in Section II, *supra*. (*See id.* at ¶¶14, 17). Moreover, Count Five merely recites the elements of civil conspiracy. (*See id.* at ¶107) ("There existed a conscious agreement among the Defendants to defraud the Plaintiffs."); (*see id.* at ¶108) ("Defendants intentionally and knowingly participated in the efforts undertaken as alleged herein . . . ."); (*see id.* at ¶109) ("Defendants by their words and actions as alleged herein displayed a conscious agreement to become part of the conspiracy.").

12

William is never identified as a person making or providing any fraudulent statements or documents to any other party here. Nothing in the Complaint supports the assertion that William "intentionally and knowingly participated" in a conscious agreement to defraud. Count Five must, therefore, be dismissed.

### B. Plaintiffs Have Failed to Plead that William Committed an Overt Act

Not only must a plaintiff connect the actions of the separate defendants but a plaintiff must also allege an overt act in furtherance of the agreement to properly plead civil conspiracy. *See Decter*, 2014 WL at * 11; *Fezzani v. Bear, Stearns & Co.*, 592 F.Supp.2d 410, 423 (S.D.N.Y. 2008) (listing the four elements of conspiracy: 1) a corrupt agreement between parties; 2) an overt act in furtherance of said agreement; 3) intentional participation to further the agreement; and 4) resulting injury); *Rutkin v. Reinfeld*, 229 F.2d 248, 252 (2d Cir. 1956) ("[T]he charge of conspiracy in a civil action is merely the string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible in damages for any overt act or acts.").

Similar to Plaintiffs' claims of fraud, Plaintiffs have not alleged that William committed any overt act. They only allege that William's signature appears on a fraudulent Investment Agreement. (Complaint at ¶¶57-58). Another party allegedly provided that document to Plaintiffs and Plaintiffs concede that William denies having signed the document. Moreover, Plaintiffs admit there is evidence to indicate that Williams advised others of the fraudulent nature of the document—actions that are contrary to a knowing participant in a scheme to defraud. Accordingly, Count Five must be dismissed as a matter of law for failing to plead that William committed an overt act in furtherance of a fraudulent scheme.

**CONCLUSION**

Plaintiffs made no efforts to timely serve William, despite knowing that the Complaint and Summons were returned unserved.  With discovery exchanged, depositions taken, and an upcoming trial date, William is prejudiced if the Court exercises its discretion to find that the Complaint was timely effectuated.  Moreover, the Complaint fails to identify William as making any misrepresentation, or having any intent to deceive.  Therefore Count Three should be dismissed for failure to allege the elements of a fraud claim.  Because Count Three must be dismissed, Count Five must also be dismissed because civil conspiracy requires an underlying tort.  Regardless, Count Five would still fail as a matter of law because Plaintiffs' Complaint did not connect William to any alleged fraudulent activity and did not assert that William committed an overt act.  For these reasons, Counts Three and Five of Plaintiffs' Complaint should be dismissed, along with such other relief as the Court deems just and proper.

DATED:     New York, New York
           February 17, 2015

                                                  COLE SCHOTZ P.C.
                                                  Attorneys for Defendant, Ezra William

                                                  By   */s/ Leo V. Leyva*
                                                      Leo V. Leyva
                                                      Jed M. Weiss
                                                      900 Third Avenue
                                                      New York, New York 10022
                                                      (212) 752-8000